706 P.2d 77

**STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Rodney ARAIZA, Defendant-Appellant.**

**No. 15190.**

Court of Appeals of Idaho.

Aug. 28, 1985.

Steve Botimer, Gooding County Public Defender, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Following his pleas of guilty to robbery and to battery with intent to commit robbery, Rodney Araiza was sentenced to two concurrent, indeterminate ten-year terms in the custody of the State Board of Correction. He later filed a motion under I.C.R. 35 for reconsideration of his sentences, asking that the sentences be reduced to six years each. The motion was summarily denied by the district court following receipt of a letter from the prosecuting attorney asserting that Araiza's motion had not been filed within 120 days after his sentences were imposed. *See* I.C.R. 35. Araiza filed a notice of appeal and submitted a brief contending he had been denied the opportunity to show that the prosecutor's assertion was erroneous. Upon motion by the state, the Idaho Supreme Court entered an interim order requiring the district court to hold a hearing on Araiza's Rule 35 motion. The hearing was held; the district court considered Araiza's motion on its merits, and again denied any relief under Rule 35. Thereafter, a supplemental brief on appeal was filed by Araiza, a responsive brief was filed by the state and the case was assigned to the Court of Appeals for disposition.

The issue now framed on appeal is whether the district court abused its discretion in denying relief to Araiza under Rule 35, after hearing the motion on its merits.[1] We affirm the district court's order.

The district court found—and Araiza does not assert otherwise—that the sentences had been imposed in a legal manner. It is well established that a motion to reduce a sentence which has been imposed in a legal manner is addressed to the sound discretion of the district court. *State v. Arambula,* 97 Idaho 627, 550 P.2d 130 (1976). Such a motion is essentially a plea for leniency which may be granted if the sentence originally imposed was, for any reason, unduly severe. *State v. Sutton,* 106 Idaho 403, 679 P.2d 680 (Ct.App.1984). Where an appeal is taken from an order refusing to reduce a sentence under Rule 35, our scope of review includes all information submitted at the original sentencing hearing and at the subsequent hearing held on the motion to reduce. *State v. Yarbrough,* 106 Idaho 545, 681 P.2d 1020 (Ct. App.1984).

Araiza could have been sentenced to a maximum term of life for the robbery, I.C. § 18–6503. He could have been sentenced to a fixed term of fifteen years for the offense of battery with intent to commit robbery. I.C. §§ 18–911, 912. Thus, the ten year indeterminate sentences he received were well within the statutory limits. A sentence which is within the allowable maximum will not be disturbed unless a clear abuse of discretion is shown. *State v. Cotton,* 100 Idaho 573, 602 P.2d 71 (1979). A sentence may represent such an abuse if it is shown to be unreasonable upon the facts of the case. *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App. 1982).

The robbery and battery occurred when Araiza entered a bar after it was closed, while the bartender—an elderly gentleman

---

1. In his supplemental brief, Araiza also makes a claim for attorney fees on appeal. It appears that this claim may have been included in his brief by inadvertence inasmuch as the claim was made under a statute applicable to civil cases, I.C. § 12–121. Also, Araiza's counsel on appeal is a local public defender appointed by the district court and compensated by public funds, not by Araiza. We therefore will not address that issue.

who was also employed as janitor for the establishment—was cleaning up. Araiza had been drinking earlier, at the bar, before closing time. Araiza struck the bartender-janitor on the head with a whiskey bottle. When the victim fell to the floor, Araiza stomped on the victim's hand and kicked him in the head and neck. Araiza reached in the victim's pocket and took the keys to the bar. Araiza then found money in the bar's safe. He took the money, a pistol and several bottles of whiskey and left. The bartender-janitor, who was acquainted with Araiza before the incident, immediately called the police and Araiza was apprehended later the same morning.

Both at the time of the incident and sentencing Araiza was a juvenile. According to his presentence report, he had a juvenile offense history. The report noted that: "He has also been through the juvenile system; at first being placed on probation, then placed in the Youth Service Center, released on parole, violated parole, returned to the Youth Service Center. He was currently on juvenile parole when he committed the present offense...." The report also indicated that Araiza "has a compulsive need for drugs and alcohol which causes him to engage in bizarre behavior." In a letter to the sentencing judge explaining his version of the robbery, Araiza stated he had been drinking alcoholic beverages, smoking marijuana and "taking some acid" the evening preceding the robbery.

At the sentencing hearing the district court determined that Araiza had a history of violence and that he was a threat to society. The court noted that Araiza's beating of the victim over the head with a bottle was "the first step to murder" and that, fortunately for Araiza, the victim survived. The court considered Araiza's alcohol and drug-related problems. The court determined that rehabilitation was not "realistic" in view of the lack of success experienced through the Department of Health and Welfare handling Araiza as a juvenile offender. Essentially, the court concluded that the interest of society was best served by incarcerating Araiza for an indeter-

minate period not to exceed ten years on each of the charges. The court ordered the sentences to be served concurrently.

 When reviewing indeterminate sentences, we deem the length of confinement to be one-third of the face amount of the sentence, absent a contrary indication in the record. *State v. Toohill, supra.* Here, for the purpose of appellate review, the length of confinement is treated as one-third of the ten-year concurrent sentences. In *Toohill,* we explained that a term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation and retribution. These criteria also apply to rulings on motions to reduce sentences under Rule 35. *State v. Lopez,* 106 Idaho 447, 680 P.2d 869 (Ct.App.1984).

At the time of the hearing on Araiza's motion to reduce his sentences, Araiza was seventeen years of age. He had been in the penitentiary for approximately one year. He described threats on his life and other pressures against him made by other inmates. He stated that he had been in trouble for fighting and was "caught with some booze [he was] holding for somebody." He related that he was being held in close custody because of too many "write-ups," i.e., violating administrative rules of conduct. He admitted to having used both alcohol and marijuana while in the penitentiary. He disclosed that he had not completed any rehabilitation or education courses nor had he been assigned to any job-skill development programs, because of his write-ups and close custody status.

At the conclusion of the hearing on Araiza's motion to reduce his sentences, the court denied the motion, stating:

I might say, Mr. Araiza, that I had serious questions when I originally sentenced you because of your youth. I was greatly concerned over it. However, I consider the crime that you committed

was the first step and close to murder. And but for some fortuitous circumstances, either the health of the victim or good medical care or something of that nature, it wasn't murder.

I have no doubt but what you have some problems in the Penitentiary because of your youth. Apparently you have been able to survive some of that. But I am really concerned about the fact that your own statement saying you have had several write-ups, that you are in close custody now. And I haven't seen any indication from you that you have learned all that much in the Penitentiary. I suppose I could ask the Penitentiary to give me a report on you, but from your own testimony it indicates that you have had the write-ups and the report I can assume would not be to your benefit.

It seems to me you have been in the Penitentiary for a year, and had you conducted yourself in a proper manner, you should have been out in the main yard or into one of the places such as the jewelry shop or the wood shop or the car shop or out on the farm. But rather than that the authorities have deemed it necessary to put you in close custody and I gather from the testimony here that that was not necessarily for your own protection any more than it was for the protection of other inmates or of having to control the prison population. This is the manner in which the Penitentiary saw fit to do.

 Having reviewed all of the information presented at Araiza's original sentencing hearing and at the subsequent hearing on the Rule 35 motion, we conclude that the district court did not abuse either its sentencing discretion nor its discretion in determining whether leniency should be granted by reducing the sentences originally imposed.

The order denying relief to Araiza on his Rule 35 motion is affirmed.

SWANSTROM and BURNETT, JJ., concur.