728 P.2d 398

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Angel Martinez PUGA, Defendant-Appellant.**

**No. 16143.**

Court of Appeals of Idaho.

Oct. 30, 1986.

Van G. Bishop, Nampa, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., A. René Fitzpatrick and David Minert, Deputy Attys. Gen., (argued), for plaintiff-respondent.

WALTERS, Chief Judge.

Angel Puga was convicted of vehicular manslaughter. He received a seven-year fixed sentence. On appeal, Puga argues that a fixed period of confinement without treatment for his chronic alcoholism violates his statutory and constitutional rights. He contends that probation with treatment should have been ordered; or that an indeterminate period of confinement with provision for treatment and rehabilitation was appropriate. We hold that Puga's rights were not violated and that the trial judge did not abuse his sentencing discretion. We affirm the judgment and sentence.

Puga was charged with two counts of vehicular manslaughter (I.C. § 18–4006) and two counts of aggravated driving (I.C. § 18–8006) following a head-on collision between his pickup and another vehicle. Two passengers in the other auto were killed in the accident. The other driver and another passenger were seriously injured. All of the victims were from the same family. It was determined that Puga had crossed the center line while driving under the influence of alcohol. The record indicates he had a blood alcohol level exceeding .20% at the time of the accident. In pleading guilty to all four charges, Puga expressed remorse about this tragedy and indicated a desire to obtain treatment for his alcoholism.

The state recommended the maximum sentences for each count. Relying upon I.C. § 18–301, the district judge concluded that he could sentence Puga for only one criminal "act." He imposed the maximum sentence for a single count of vehicular

manslaughter.[1] At the sentencing hearing, the trial judge found that incarceration was necessary for the protection of the public, and that the maximum period of confinement was appropriate due to the "seriousness of the crime" and to punish and deter Puga. The trial judge also expressed frustration with his inability to ensure treatment for Puga's chronic alcoholism prior to Puga's release from confinement.

The presentence evaluation indicates that Puga is a chronic alcoholic with problems dating from his military service in the Vietnam War and from his subsequent divorce. He suffers from intermittent drinking bouts and had sought professional help on three occasions prior to this incident. Just two days before the accident he had been released from jail on two pending charges of driving under the influence of alcohol. When not under the influence of alcohol Puga appears to be a trustworthy and responsible employee. He was decorated for his military service. The trial judge acknowledged these attributes, stating, "You [Puga] are not what I would call a common criminal in the sense that we have them...." However, despite Puga's request for probation, the trial judge still found it necessary to impose a seven-year fixed term of incarceration.

In reviewing a sentence, we conduct an independent examination of the record, focusing upon the nature of the offense and the character of the offender. *State v. Beltran,* 109 Idaho 196, 706 P.2d 85 (Ct. App.1985). Puga committed an act resulting in multiple deaths and severe injuries. His actions are not excused by intoxication. I.C. § 18–116. The presentence report includes a record of prior offenses. The threshold choice of probation or confinement is committed to the sound discretion of the trial judge. *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982).

■ The trial court properly applied the criteria of I.C. § 19–2521 in deciding between probation and confinement. In the trial court's opinion, Puga's background suggested a high risk of recurrence of an event similar to the accident in this case if Puga were placed on probation, even if treatment for alcoholism was ordered. In seeking to protect the public, the trial court may consider the likelihood that the defendant will commit another crime while on probation. We hold the trial court did not abuse its discretion in concluding that imprisonment, rather than probation, was necessary in Puga's case.

Puga also argues that confinement without a guarantee of treatment for alcoholism is in violation of his constitutional and statutory rights. The trial court acknowledged that without treatment Puga's illness was likely to remain and could result in alcohol abuse following his release. However, having concluded that confinement was appropriate, the trial judge found himself powerless to ensure treatment during incarceration.

■ The eighth amendment to the U.S. Constitution does not require treatment for alcoholism, even where the disease creates a continuing danger to the public. *Cf. People v. White,* 656 P.2d 690 (Colo.1983) (treatment of sex offender not guaranteed). On the other hand, imprisonment may result in cruel and unusual punishment if adequate medical facilities are not provided. *See Hoptowit v. Ray,* 682 F.2d 1237 (9th Cir.1982). Puga has not alleged that the Idaho prison system fails to contain adequate medical facilities. Such conditions will not be presumed—the burden is on the person asserting a constitutional violation to show the sentence is actually cruel and unusual. *State v. Stansbury,* 108 Idaho 652, 701 P.2d 272 (Ct.App.1985).

■ Puga points to the Idaho Alcoholism and Intoxication Treatment Act, I.C. §§ 39–301 through 39–311, for a statutory right

---

1. On appeal, neither party has questioned the multiple-count conviction or the trial court's decision to impose a sentence only on one count. Therefore we do not decide whether this approach is correct under Idaho law. *Compare State v. Lee,* 111 Idaho 489, 725 P.2d 194 (Ct. App.1986).

to treatment. The act provides for the evaluation and treatment of alcoholics outside of prison facilities. While eliminating the status offense of public intoxication, the act expressly *does not* affect offenses involving the operation of a vehicle while intoxicated. *See* I.C. § 39–310. Although we concur that treatment and rehabilitation of chronic alcoholics, including those housed in Idaho's prisons, is in the best interests of society, we find no mandate for such treatment contained within the act.

■ We now consider whether the length of the sentence is excessive. Seven years is the maximum term of imprisonment authorized by statute for vehicular manslaughter. *See* I.C. § 18–4007(3)(a). A sentence within the statutory maximum will not be disturbed on appeal unless the appellant shows an abuse of discretion. *State v. Miller,* 105 Idaho 838, 673 P.2d 438 (Ct.App.1983). For purposes of reviewing a fixed sentence for abuse of discretion we deem the duration of confinement to be the facial term less the statutory credit for good conduct made available as a matter of right by I.C. § 20–101A. *Id.* In this case the fixed term, less a good conduct reduction, would be slightly more than five years.

As set forth in *Toohill,* the term of confinement must appear reasonable upon the facts of the case. A term of confinement is reasonable to the extent it appears necessary to accomplish the primary goal of protecting society and to achieve any of the related goals of deterrence, rehabilitation or retribution. *Id.* The trial judge expressly stated that the maximum term was being imposed to protect society for the maximum period, to deter Puga and others from similar acts, and as a reflection of the seriousness of the crime.

Puga points to shorter and indeterminate sentences recently imposed in other cases involving vehicular manslaughter by intoxicated drivers to demonstrate that his fixed period of confinement is unreasonable. We are not persuaded. The trial court must sentence the individual and not merely the ' crime category. *Holmes v. State,* 104 Idaho 312, 658 P.2d 983 (Ct.App.1983). Moreover, the mere existence of lesser sentences in other cases does not mean that such sentences were more appropriate than the sentence under review. Without a fuller record we cannot, and will not, presume that the sentence here is disproportionate.

In contrast to an indeterminate sentence, a fixed sentence allows no opportunity for parole. Lengthy confinement without remedial programs can run counter to rehabilitation goals. It may diminish a prisoner's ability or motivation to conform to the law upon release.[2] *State v. Pettit,* 104 Idaho 601, 661 P.2d 767 (Ct.App.1983). However, in this case the trial court, balancing all of the sentencing objectives, gave greater weight to retribution, deterrence and protecting society. The choice was a reasonable one. We will not substitute our judgment for that of the trial court. We hold that the court did not abuse its discretion in imposing a fixed seven-year sentence. We affirm the judgment and sentence.

BURNETT and SWANSTROM, JJ., concur.

---

2. We note that trial courts will soon have the power to specify a minimum period of confinement in combination with an indeterminate sentence. *See* I.C. § 19–2513 as amended by 1986 Idaho Sess. Laws ch. 232, § 3 at 638, effective February 21, 1987 (applicable to offenses committed on or after that date).